O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

|  |  |
|---|---|
| JOHN URBINO, for himself and on behalf of other current and former employees,<br><br>               **Plaintiffs,**<br><br>     **vs.**<br><br>ORKIN SERVICES OF CALIFORNIA, INC., a Delaware corporation; ROLLINS, INC., a Delaware corporation; and DOES 1 THROUGH 100, inclusive,<br><br>         **Defendants.** | Case No.: 2:11-cv-06456-CJC(PJWx)<br><br><br>**ORDER DENYING PLAINTIFF'S MOTION TO REMAND AND DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

## I.  INTRODUCTION

Plaintiff John Urbino brought this representative action against Orkin Services of California, Inc. and Rollins, Inc. (collectively, "Defendants") for violations of the California Labor Code as an aggrieved employee, on behalf of himself and other current and former employees, under the Labor Code Private Attorneys General Act of 2004

("PAGA"), Cal. Lab. Code §§ 2698–2699, in Los Angeles Superior Court.  Defendants subsequently removed the action to this Court based on diversity jurisdiction. Defendants now move to compel arbitration of Plaintiff's PAGA claim based on a written arbitration agreement between Plaintiff and Defendants.  At the same time, Plaintiff moves to remand the action, alleging that there is no diversity jurisdiction because the amount in controversy does not exceed $75,000.

Because there is complete diversity of citizenship and Defendants have shown more likely than not that the projected total amount in controversy exceeds $75,000, as calculated by aggregating the claims of the aggrieved employees under the "common and undivided" exception to the anti-aggregation rule, Plaintiff's motion to remand is DENIED.  Defendants' motion to compel arbitration is also DENIED because the arbitration agreement contains an unconscionable PAGA arbitration waiver, rendering the agreement unenforceable under California law.

## II.  BACKGROUND

Plaintiff worked for Defendants as a nonexempt, hourly-paid employee in Los Angeles from June 2005 until July 2010.  (Compl. ¶¶ 4, 8; Decl. of J. Blandford in Supp. Pet. to Compel Arbit. ¶ 3.)  Defendants are incorporated in Delaware and provide pest control services in the State of California, including in Los Angeles County.  (Compl. ¶¶ 5–6.)  At the time of his hire, Plaintiff signed an arbitration agreement (the "Agreement"), which also incorporated Defendants' Dispute Resolution Policy ("DRP"). (Decl. of J. Blandford in Supp. Pet. to Compel Arbit. ¶¶ 3–4 & Exh. A; Defs.' Notice of Errata Re Decl. J. Blandford, Exh. 1. )  Under the Agreement, executed on June 17, 2005, Plaintiff agreed "to arbitrate any dispute, claim or controversy regarding or arising out of [his] employment."  (Decl. of J. Blandford in Supp. Pet. to Compel Arbit., Exh. A.)  The Agreement also stated that the arbitral procedures would be governed by the Federal

Arbitration Act ("FAA").  (*Id.*)  The Agreement further contains the following limitation on arbitration proceedings:

> any arbitration proceeding under this Agreement will not be consolidated or joined with any action or legal proceeding under any other agreement or involving any other employees, and will not proceed as a class action, private attorney general action or similar representative action.

(*Id.*)  The DRP also includes the same provision.  (*See* Defs.' Notice of Errata Re Decl. J. Blandford, Exh. 1, at 12.)  On June 21, 2011, Plaintiff filed this instant PAGA action against Defendants in Los Angeles Superior Court, alleging that Defendants deprived him and other current and former nonexempt employees of their rightful meal periods, overtime and vacation wages, and accurate itemized wage statements, in violation of various sections of the California Labor Code.  (Compl. ¶¶ 1–4, 16.)  Specifically, pursuant to California Labor Code § 2699(f), Plaintiff, as an aggrieved employee, on behalf of himself and other current and former employees, seeks civil penalties for Defendants' purported violations of California Labor Code §§ 2699(f), 558, 226.3, 1174.5, and 1197.1.  (*Id.* ¶ 18.)[1]

On August 5, 2011, Defendants removed the action to this Court based on diversity jurisdiction.  (Dkt. No. 1; Defs.' Notice of Removal ¶¶ 5–25.)  On August 15, 2011, Defendants moved to compel arbitration.  (Dkt. No. 12.)  At the same time, Defendants

---

[1] Plaintiff previously filed a similar complaint against Defendants on December 20, 2010, in the Superior Court for the County of Orange, but based as a class-action PAGA claim.  (*See* Case No. 8:11-cv-00117-CJC(PJWx), Notice of Removal, Dkt. No. 1.)  Defendants removed the action to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d), which was unchallenged by Plaintiff.  As here, Defendants moved the Court to compel arbitration.  Before the motion could be heard, the parties filed a joint stipulation dismissing the action but preserving Plaintiff's right to refile the action as well as Defendants' right to compel arbitration pursuant to the parties' tolling agreement.  (Dkt. No. 25.)  The Court granted the parties' request for dismissal of the complaint without prejudice and granted the tolling agreement on June 13, 2011.  (Dkt. No. 27.)  Thereafter, on June 21, 2011, Plaintiff filed his complaint in the instant action in Los Angeles Superior Court.

filed a counterclaim for declaratory relief against Plaintiff under 28 U.S.C. § 2201, requesting a judicial declaration that Mr. Urbino's claims are subject to the parties' Agreement and DRP; that all of Mr. Urbino's claims against Defendants be resolved in the arbitral forum; and that Mr. Urbino be prohibited from bringing any claims under PAGA.  (Defs.' CounterClaim ¶ 13; Dkt. No. 14.)  On September 2, 2011, Plaintiff moved to remand the action based on lack of subject matter jurisdiction.  (Dkt. No. 21.) The Court continued Defendants' motion to compel arbitration to coincide with Plaintiff's motion to remand, scheduled for October 3, 2011.  (Ct. Order, Dkt. No. 28, Sept. 15, 2011.)  On September 29, 2011, the Court took Defendants' motion to compel arbitration and Plaintiff's motion to remand under submission.  (Ct. Order, Dkt. No. 31, Sept. 29, 2011.)

## III.  PLAINTIFF'S MOTION TO REMAND

The Court has proper subject matter jurisdiction over this action because there is complete diversity of the parties and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(a)(1).

### A.  Legal Standard

A civil action brought in a state court, but over which a federal court may exercise original jurisdiction, may be removed by the defendant to a federal district court.  28 U.S.C. § 1441(a).  However, "[a] suit may be removed to federal court under 28 U.S.C. § 1441(a) only if it could have been brought there originally."  *Sullivan v. First Affiliated Sec., Inc.*, 813 F.2d 1368, 1371 (9th Cir. 1987); *Infuturia Global Ltd. v. Sequus Pharmaceuticals, Inc.*, 631 F.3d 1133, 1135 n.1 (9th Cir. 2011) ("[A] federal court must have both removal and subject matter jurisdiction to hear a case removed from state court.")  The burden of establishing subject matter jurisdiction falls on the party seeking

removal, and the removal statute is strictly construed against removal jurisdiction.  *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) ("Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")  A federal court can assert subject matter jurisdiction over cases that (1) involve questions arising under federal law or (2) are between diverse parties and involve an amount in controversy that exceeds $75,000.  28 U.S.C. §§ 1331, 1332.  If it appears that the federal court lacks subject matter jurisdiction at any time prior to the entry of final judgment, the federal court must remand the action to state court.  28 U.S.C. § 1447(c).[2]

## B.  Diversity Jurisdiction

A district court has original "diversity" subject matter jurisdiction over all "civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and cost," and the action is "between citizens of different States."  28 U.S.C. § 1332(a)(1).  The district court has jurisdiction only if there is "complete diversity" between the parties, meaning that each plaintiff is a citizen of a different state than each defendant.  *See id.*; *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996) (citing *Strawbridge v. Curtiss*, 3 Cranch. 267 (1806)).

The parties do not contest that complete diversity of the parties exists.  The parties, however, disagree over whether the amount in controversy exceeds $75,000.  Plaintiff's Complaint does not allege a specific amount in controversy.  Although Plaintiff alleges specific amounts per initial and subsequent violations under California Labor Code §§ 2699(f), 558(a)(1), 226.3, 1174.5, 1197.1, it is uncertain how many employees or pay periods are at issue.  Where, as here, the state court complaint is unclear as to whether the

---

[2]  Defendants did not seek removal based on CAFA.  Plaintiff agrees that CAFA does not apply because he is not bringing a putative class action claim.  Therefore, the Court does not reach the issue of whether removal jurisdiction is proper under CAFA.

requisite amount of controversy is pled, defendant bears the burden of establishing by a "preponderance of the evidence" that the amount in controversy exceeds $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007).[3]  To meet this standard, the defendant needs to "provide evidence establishing that it is 'more likely than not' that the amount in controversy exceeds" $75,000.  *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).  The district court considers facts presented in the defendant's removal petition as well as summary judgment-type of evidence relevant to the amount of controversy at the time of removal, but conclusory allegations regarding the amount in controversy are insufficient.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003) (per curiam).

        In this case, Defendants have submitted a declaration by Tamera Roberson, an employee of Rollins, Inc., who provides system analysis and data retrieval services for Defendants, attesting to the fact that there were 811 individuals employed by Orkin as nonexempt employees in California, and that from June 21, 2010 (the date Plaintiff filed this action) through the present, Orkin issued at least 17,182 paychecks for the time worked by the 811 nonexempt employees in California.  (Decl. of T. Roberson in Supp. Defs.' Removal ¶¶ 9–11; Defs.' Notice of Removal ¶ 6.)  Using these figures and the statutory penalty amounts, Defendants calculate the total amount in controversy for the statutory penalties related to the alleged initial violations of the Labor Code §§ 2699(f), 558(a)(1), 226.3, and 1197.1(a)(1), to be $405,500,[4] and the total amount in controversy

---

[3]  In contrast, where the state court complaint alleges on its face an amount in controversy that meets the jurisdictional threshold, removing defendant must show to a "legal certainty" that the plaintiff actually cannot recover that amount.  *Guglielmino*, 506 F.3d at 699.

[4]  Defendants arrive at this number by multiplying the total civil penalties for initial pay period violations ($100 for the initial violation of Cal. Lab. Code § 2699(f) + $50 for the initial violation of Cal. Lab. Code § 558(a)(1) + $250 for the initial violation of Cal. Lab. Code § 226.3 + $100 for violation of Cal. Lab. Code § 1197.1(a)(1) = $500) by 811 (the number of initial paychecks for the 811 employees) for a total of $405,500.  (Notice of Removal ¶ 6.)

for subsequent violations of Labor Code §§ 2699(f), 558(a)(2), and 1197.1(a)(2), to be

$9,004,050.00.[5]   (Notice of Removal ¶ 6.)  Under PAGA, of the civil penalties recovered

by the aggrieved employees, 75 percent is allotted to the Labor and Workforce

Development Agency ("LWDA") while 25 percent goes to the aggrieved employees.

Cal. Lab. Code § 2699(i).  Defendants claim that because 75 percent of $9,004,050.00 is

well over the jurisdictional amount and because a PAGA claim need not satisfy class

action requirements under *Arias v. Superior Court*, 46 Cal. 4th 969, 980 (2009), this

Court has subject matter jurisdiction over this action.  (Notice of Removal ¶¶ 8, 10–11.)

Plaintiff does not take issue with Defendants' final calculation and agrees that his

PAGA claim is not being brought as a class action.  (Pl.'s Mem. in Supp. Remand, at 3–

4; Defs.' Opp. to Remand, at 5.)  The parties also agree that, as clarified in *Arias*, a

PAGA action is essentially a law enforcement action brought on behalf of the State and

need not meet the requirements for a class action.  (Notice of Removal ¶ 10; Pl.'s Mem.

in Supp. Remand, at 3–4.)  However, the parties disagree on the method of calculating

damages for a nonclass PAGA action.  Plaintiff argues that under PAGA, an individual

has a separate and distinct claim, such that the aggrieved employees' claims cannot be

aggregated to meet the jurisdictional amount under the well-established anti-aggregation

rule.  (Pls.' Mem. in Supp. Remand, at 5–6.)  Plaintiff further claims, using Defendants'

figures, that in this case no single individual employee's damages exceed $75,000, as the

damages entitled to each employee is approximately $11,602.40 ($9,409,550.00 / 811).

(*Id.* at 6.)  According to Plaintiff, Defendants impermissibly aggregate the claims of all

---

[5]  Defendants arrive at this number by totaling the civil penalties for subsequent pay period violations ($200 per pay period for each subsequent violation of Cal. Lab. Code § 2699(f) + $100 per pay period for each subsequent violation of Cal. Lab. Code § 558(a)(2) + $250 per pay period for each subsequent violation of Cal. Lab. Code § 1197.1(a)(2) = $550); subtracting the initial pay checks for each employee (811) from the total pay periods of pay checks (17,182), leaving 16,371 subsequent pay periods for which there are alleged violations; and multiplying the total civil penalties ($550) by the subsequent pay periods (16,371) for a total of $9,004,050.00.  (*Id.*)  Defendants do not include penalties for alleged subsequent violations of Cal. Lab. Code § 226.3 in the calculation of the amount in controversy.  (*Id.*)

the aggrieved employees to meet the jurisdictional threshold.  (*Id.*)  Finally, Plaintiff contends aggregation is not permitted under the "common and undivided" exception because a PAGA action consists of separate and distinct individual claims.  (*Id.*)  Defendants do not challenge the application of the anti-aggregation rule or argue that the "common and undivided" exception to the anti-aggregation applies here.  Instead, Defendants contend that the amount in controversy is not based on aggregating individual claims at all, but on what the State – as a putative plaintiff in a PAGA action –  is entitled to under PAGA.  (Notice of Removal ¶¶ 10–11; Defs.' Opp. to Remand, at 4–5.)

The Court disagrees with Plaintiff's analysis and finds that Defendants have met their burden of showing more likely than not that the amount in controversy exceeds $75,000.  The issue of how the amount in controversy is calculated in a PAGA action has not been addressed by the Ninth Circuit, while recent district court decisions are divided.  The Court will first discuss the nature and purpose of a PAGA action and then examine the relevant rules for calculating the amount in controversy for diversity jurisdiction.

## 1.  Representative Actions under PAGA

The California Supreme Court in *Arias v. Superior Court* discussed at length the distinctive features of a PAGA action.  Under PAGA, a plaintiff brings a representative action as an "aggrieved employee," on behalf of himself and other current or former employees, and seeks civil penalties for Labor Code violations by employers, with 75 percent going to the LWDA and the remaining 25 percent to the aggrieved employees.  Cal. Lab. Code § 2699(a), (i).  In 2003, the California Legislature enacted PAGA in response to staffing reductions for labor law enforcement agencies and to enable aggrieved employees to act as private attorneys general to recover civil penalties for Labor Code violations, "with the understanding that labor law enforcement agencies were to retain primacy over private enforcement efforts."  *Arias*, 46 Cal. 4th at 980 (citing Cal.

Lab. Code § 2698, *et seq.*, Stats. 2003, ch. 906, §§ 1, 2, eff. Jan. 1, 2004.)  A private plaintiff asserting a PAGA claim is thus "essentially bringing a law enforcement action designed to protect the public and not to benefit private parties."  *Id.* at 986 (internal citation and quotes omitted).  The plaintiff acts as a "proxy or agent of the state's labor law enforcement agencies," such that the plaintiff "represents the same legal right and interest as state labor law enforcement agencies – namely, recovery of civil penalties that otherwise would have been assessed and collected by the [LWDA]."  *Id.*

The California Supreme Court also distinguished a class action from a PAGA action, noting that PAGA claims *may*, but need not be brought as class action claims.  *Id.* at 981 & n.5; *see also id.* at 976 n.2 (stating that a "representative action" may be either class or nonclass actions).  As a nonclass representative action, a PAGA suit need not satisfy class action requirements.  *Id.* at 975, 981–87; *see also Sample v. Big Lots Stores, Inc.*, No. C 10-03276, 2010 WL 4939992, at *3 (N.D. Cal. Nov. 30, 2010).

In this case, the Complaint contains no allegations suggesting that the PAGA claim is being brought as a class action.  Thus, Plaintiff's PAGA claim need not meet class action requirements, and the issue of whether the case is removable under CAFA is irrelevant.[6]  For a nonclass PAGA action, as here, the issue is whether the amount in controversy may be calculated by aggregating the civil penalties of all the aggrieved employees.  Plaintiff argues that civil penalties cannot be aggregated because claims in a PAGA action are separate and distinct, not common and undivided.  (Pls.' Mem. in Supp. Remand, at 5–6.)  The Court disagrees and finds that the "common and undivided" exception applies to a PAGA claim.

---

[6]  Defendants do not affirmatively state that removal is based on CAFA, but only suggest that "even were [sic] CAFA to apply, the amount in controversy exceeds $5,000,000.00, and therefore meets the minimal standards for a CAFA claim as well."  (Notice of Removal ¶ 11.)  Regardless of whether Defendants clearly state that CAFA is a basis for removal, Plaintiff is not asserting a class action, and thus CAFA cannot be a basis for removal.

## 2.  The Anti-Aggregation Rule

As a general rule, multiple plaintiffs who assert "separate and distinct" claims in a lawsuit may not aggregate their claims to satisfy the jurisdictional amount.  *Troy Bank of Troy, Ind. v. G.A. Whitehead & Co.*, 222 U.S. 39, 40 (1911); *Synder v. Harris*, 394 U.S. 332, 335 (1969); *Gibson v. Chrysler Corp.*, 261 F.3d 927, 943–44 (2001).  But "when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount."  *Troy*, 222 U.S. at 40–41; *see also Synder*, 394 U.S. at 335.[7]  Although the distinction between "distinct and separate" versus "common and undivided" claims is not always clear, the Ninth Circuit noted in *Eagle v. American Telephone and Telegraph Co.* that "the character of the interest asserted depends on the source of plaintiffs' claims.  If the claims are derived from rights that they hold in group status, then the claims are common and undivided.  If not, the claims are separate and distinct."  769 F.2d 541, 546 (9th Cir. 1985).[8]

The Ninth Circuit has not yet ruled on the issue of whether individual claims in a PAGA action are "separate and distinct," "common and undivided," or otherwise.  District courts within the Ninth Circuit are split on the issue.  Two district court decisions have recently interpreted claims in a PAGA action to be separate and distinct, thereby precluding aggregation to meet the jurisdictional amount.  *See Zator v. Sprint/United Mgmt. Co.*, No. 09cv2577, 2011 U.S. Dist. LEXIS 33383, at *3 (S.D. Cal. Mar. 29, 2011) ("The claim by one plaintiff must satisfy the $75,000 amount in controversy requirement;

---

[7] The anti-aggregation applies equally to class actions, such that separate and distinct claims cannot be aggregated, *Zahn v. Int'l Paper Co.*, 414 U.S. 291, 301 (1973), and at least one plaintiff in the putative class must satisfy $75,000 threshold, *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 549 (2005).

[8] Another exception to the anti-aggregation rule is "in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant."  *Synder*, 394 U.S. at 335.

1   the claims of other aggrieved employees cannot be aggregated to reach that threshold.”);

2   *Pulera v. TW Construction Co., Inc.*, No. 2:08-cv-00275, 2008 WL 3863489, at *4 (E.D.

3   Cal. Aug. 19, 2008) (“The amounts recoverable by Plaintiff based on his PAGA claims

4   are separate and distinct from the amounts recoverable by the State of California via the

5   LWDA, and therefore these amounts may not be aggregated.”).  Relying heavily on the

6   *Zator* decision, Plaintiff argues that the claims of the aggrieved employees cannot be

7   aggregated because their claims are separate and distinct.  (Pls.’ Mem. in Supp. Remand,

8   at 5.)

9

10       In contrast to the *Pulera* and *Zator* decisions, the district court in *Thomas v. Aetna*

11   *Health of California, Inc.* found a PAGA claim to be “common and undivided because

12   the right to pursue the action derives solely from the LWDA’s interest in enforcement of

13   the Labor Code,” while “[a]ggrieved employees have no right to seek any individual

14   recovery under PAGA and are precluded from bringing repeated PAGA suits.”  No. 1:10-

15   cv-01906, 2011 WL 2173715, at *19 (E.D. Cal. June 2, 2011).  The *Thomas* court

16   reasoned that “aggrieved employees have no separate and individual rights to pursue

17   under PAGA that would transform it from a law enforcement action that furthers the

18   interests of the LWDA into a myriad of separate and distinct claims of the aggrieved

19   employees.”  *Id.*  Analogizing a PAGA action to a typical shareholders’ derivative suit,

20   the *Thomas* court held that “the amount at stake in a PAGA claim is predicated on the

21   *total amount of the penalties* that can be sought by the aggrieved employees as the proxy

22   of the LWDA.”  *Id.*

23

24       The Court disagrees with the analysis offered by the *Pulera* and *Zator* courts and

25   finds the *Thomas* court’s reasoning persuasive.  The decision in *Pulera* and *Zator* do not

26   fully taken into account the purpose and nature of a PAGA claim.  In *Pulera*, the plaintiff

27   brought an action in federal court for PAGA civil penalties.  *Pulera*, 2008 WL 3863489,

28   at *1.  One of the defendants moved to dismiss the action for lack of subject matter

jurisdiction on the grounds that the amount in controversy fell below $75,000, as measured by the individual plaintiff's possible recovery. *Id.* at *1, *2. The court rejected the plaintiff's argument that the LWDA's recovery under PAGA should not be separated from his individual claim because, instead of "neither party" being able to enforce the claim without the other, which is characteristic of a common and undivided claim, either the plaintiff or LWDA could enforce the claim under PAGA. *Id.* at *3–*4. The court observed that because the aggrieved employees could adjudicate their own claims, the amount in controversy should be determined by what is recoverable by the employee individually. *Id.* at *4. The court accordingly granted the defendant's motion to dismiss for lack of subject matter jurisdiction. *Id.* *5.

But the *Pulera* court overlooked the fact that while an aggrieved employee may separately litigate a PAGA claim if the LWDA declines to do so, a PAGA action is essentially a representative action brought by a group of aggrieved employees on behalf of the State. The primary beneficiary is the public at large, not the private individuals involved. As noted in *Arias v. Superior Court*, "any direct financial benefit to those harmed by the employer's unlawful conduct is ancillary to the primary object" of a PAGA claim – namely, to further the reach of the LWDA and protect the public's interest. 46 Cal. 4th at 987 n.7; *see also Ochoa-Hernandez v. Cjaders Foods, Inc.*, No. C 08-2073, 2010 WL 1340777, at *4 (N.D. Cal. April 2, 2010) (unlike a class action, the purpose of a PAGA suit "is to incentivize private parties to recover civil penalties for the government that otherwise may not have been assessed and collected by overburdened state enforcement agencies"). Furthermore, the PAGA statute does not enable a single aggrieved employee to litigate his or her claims, but requires an aggrieved employee "on behalf of herself or himself *and* other current or former employees" to enforce violations of the Labor Code by their employers. Cal. Lab. Code § 2699(a) (emphasis added). The statute also awards civil penalties to the aggrieved employees as a whole. *See id.* § 2699(i) (stating that "civil penalties recovered by aggrieved employees shall be

distributed as follows:  75 percent to the [LWDA] . . . and 25 percent to the aggrieved employees").  The statute therefore contemplates a common group action with civil penalties being awarded to the entire group.

The *Zator* case, while more closely analogous to the facts in the instant action, is still distinguishable.  In *Zator*, the plaintiff brought a representative PAGA claim, seeking civil penalties for violations of various sections of the Labor Code as well as attorneys' fees and costs.  2011 U.S. Dist. LEXIS 33383, at *4–*5.[9]  As in *Pulera*, the *Zator* court observed that individual claims in a PAGA action are separate and distinct and thus aggregation was not permitted to meet the jurisdictional amount.  However, as support for this proposition, the *Zator* court relied on *Bernal v. Comerica Bank*, No. CV 10-04631, 2010 U.S. Dist. LEXIS 88688 (C.D. Cal. July 30, 2010), which involved a class-action PAGA claim.  In *Bernal*, the court applied the rule that where federal jurisdiction is not invoked by CAFA, "in order for the court to exercise diversity jurisdiction over the putative class claims, at least one of the named plaintiffs must independently satisfy the amount-controversy requirement."  2010 LEXIS 88688, at *10–*11.  But in contrast to *Bernal*, the present PAGA action is not being brought as a class action.  Furthermore, the defendant in neither *Bernal* nor *Zator* offered a calculation of the amount in controversy based on a total number of aggrieved employees.  Nor did the court in *Zator* wrestle with the question of whether PAGA claims may be aggregated because they are "common and undivided," but rather decided on the issue of whether attorney fees should be attributed to all aggrieved employees or solely to the representative plaintiff.  2011 U.S. Dist. LEXIS 3383, *8–*11.  The *Zator* court also declined to explicitly resolve the issue of whether all the penalties sought by plaintiff should be counted in the amount in

---

[9] It is unclear whether the plaintiff in *Zator* was bringing a class or nonclass PAGA claim.  The citations of the complaint by the *Zator* court, however, do not indicate that any class allegations were being asserted.

controversy or just those amounts he was eligible to receive, although the court stated it was inclined to adopt the latter position consistent with *Pulera*'s viewpoint.  *Id.* at *11.

### 3.  The "Common and Undivided" Exception

The "common and undivided" exception to the anti-aggregation rule applies to a PAGA action.  The amount in controversy calculus used in *Pulera* and *Zator* is premised on the understanding that a PAGA claim consists of a collection of distinct and separate individual claims.  But, as the *Arias* court explained, a PAGA action is essentially a law enforcement action designed to benefit the public, not to compensate aggrieved employees.  The district court in *Thomas v. AETNA Health of California* more recently opined at length on the issue of whether PAGA claims may be aggregated in light of the fundamental nature and purpose of a PAGA action.  In that case, the plaintiff brought a nonclass PAGA action in state court, which was subsequently removed by defendants on the basis of diversity jurisdiction.  *Thomas*, 2011 WL 2173715, at *2.  The plaintiff moved to remand the action, claiming, as does the Plaintiff here, that there was no diversity jurisdiction because the penalties under PAGA attributable to her were less than $75,000.  *Id.* at *4, *9.  The defendants argued that the jurisdictional amount was satisfied because all potential civil penalties as to the aggrieved employees could be aggregated and that the total penalties for the group exceeded $75,000.  *Id.*  The defendants reasoned that the aggrieved employees do not hold separate and distinct claims, but an "all-for-one and one-for-all" claim for PAGA penalties.  *Id.* at *13.[10]  The

---

[10] In contrast to the defendant's argument in *Thomas*, Defendants in the instant action argue not that the claims are common and undivided, but that aggregation principles do not apply at all.  (*See* Defs.' Opp. to Remand, at 5 (stating that "Defendants are not aggregating individual claims at all," but rather, "[t]he State itself is entitled to 75% of the alleged penalties . . .").)  The Court disagrees.  As noted by the *Thomas* court, a PAGA claim does not carve out a "new hybrid exception to the long-settled anti-aggregation rule," and "the prohibition against aggregation in multi-plaintiff cases and class actions applies uniformly to actions brought in a non-class representative capacity."  *Thomas*, 2011 WL 2173715, at *15.

district court agreed with the defendants' argument and held that "the amount at stake in a PAGA claim is predicated on the *total amount of the penalties* that can be sought by the aggrieved employees as the proxy of the LWDA." *Id.* at *19.  Applying this calculus, the court found that the defendants showed more likely than not that the PAGA penalties at issue amounted to more than $75,000.  *Id.* at *21.  Accordingly, the court concluded that it had subject matter jurisdiction over the PAGA claim and denied the plaintiff's motion to remand the action.  *Id.*

The Ninth Circuit has considered the application of the "common and undivided" exception to permit aggregation in different contexts.  *See Gibson*, 261 F.3d at 944.  Of relevance here is the Ninth Circuit's allowance of aggregation of minority shareholders' claims in a class action suit against the majority shareholder of a corporation in *Eagle v. Chrysler Corp.*, 769 F.2d 541 (9th Cir. 1984).  In that case, the plaintiff minority shareholder of a telephone company brought a class action in state court against a corporate majority shareholder for allegedly breaching its fiduciary duty by causing the company to forego certain tax breaks to the company's financial detriment, which in turn, caused minority shareholders to lose approximately $38 million.  *Id.* at 544.  The defendant successfully removed the class action to federal court, after which the plaintiff amended the damage allegation in his complaint to be approximately $4,200, which was below the then-jurisdictional amount of $10,000.  *Id.*  At issue before the Ninth Circuit was whether plaintiff's action was improperly removed from state court based on the damages alleged in the complaint.  *Id.* at 545.  The Ninth Circuit held that plaintiff's claim was "common and undivided" and thus the total aggregated damages of $38 million satisfied the jurisdictional threshold.  *Id.*  The *Eagle* court likened the action to a typical shareholder derivative suit under California law where "the source of the shareholders' claim for the wrongful depletion of corporate assets is the common and undivided interest each shareholder has in a corporation's assets and a right to share in dividends." *Id.* at 546.  The *Eagle* court found that the minority shareholders were in the

same position as shareholders in a typical derivative action with respect to the source of their injury, which was derivative of the injury to the corporation. *Id.* at 547. Thus, as the plaintiff's claim "derive[d] wholly from an alleged injury to the corporation's assets," the Ninth Circuit concluded that the minority shareholders' claims were common and undivided, thereby permitting aggregation. *Id.*

The *Thomas* court specifically analogized a representative PAGA action to a shareholders' derivative suit in *Eagle*, observing that in a typical shareholders' derivative suit, "the corporation sustains the primary injury; injury to the shareholders is only indirect," and "[a]s a result, the shareholders step into the shoes of the corporation and assert its interests – they have no *individual* right to recovery." *Id.* at *17; *see also Cotton v. Expo Powers Systems, Inc.*, 170 Cal. App. 4th 1371, 1380 (2009) (a derivative suit is an equitable action in which the shareholder of a corporate sues on behalf of the corporation, purporting to assert a claim that belongs to the corporation); *Grosset v. Wenass*, 42 Cal. 4th 1100, 1114 (2008) (the corporation is the ultimate beneficiary of the derivative suit). In light of the fundamental nature and purpose of a PAGA action, the Court finds this analogy persuasive. The aggrieved employees assert – as a unified group – a claim on behalf of the State, in furtherance of the LWDA's reach and ultimately for the benefit of the public. The representative plaintiff in a PAGA action derives his or her right to sue from the statute and acts as proxy for the LWDA, such that the aggrieved employees' claims are "common and undivided," rather than separate and distinct. The fact that the aggrieved employees receive 25 percent of the total civil penalties while the LWDA receives 75 percent does not render the individual claims in a PAGA action separate and distinct. *See Eagle*, 769 F.2d at 547 n.4 (noting that the shareholders intended *pro rata* division of the total fund did not render their claims separate and distinct, as "it is proper to aggregate the value of jointly held rights when several plaintiffs sue to enforce a common and undivided interest which is separate and distinct as between themselves") (internal citation and quotes omitted). The division of the civil

penalties only highlights the primary public focus of a PAGA action.  *See Thomas*, 2011 WL 2173715, at *18.

This Court agrees with the *Thomas* court and finds that the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees.[11]  Consequently, the Court finds that the claims by the aggrieved employees in this action may be aggregated, and Defendants have shown more likely than not that the total civil penalties in the amount of $9,409,550.00 well exceeds the jurisdictional threshold.[12]

## IV.  DEFENDANTS' MOTION TO COMPEL ARBITRATION

Having determined that this action was properly removed, the Court now turns to Defendants' motion to compel arbitration.  The issue before the Court is whether the Agreement, which includes a PAGA arbitration waiver, is enforceable under federal and California law.  The Court finds that because the PAGA arbitration waiver contradicts the fundamental purpose of a representative enforcement action under PAGA, it is unconscionable and unenforceable.

---

[11] This calculus does not consider PAGA's apportionment of 75 percent to LWDA and 25 percent to aggrieved employees.  Rather, the amount in controversy turns on the total civil penalties.

[12] Defendants do not state in their removal papers that removal is based on anything other than diversity jurisdiction, yet assert for the first time in their Opposition that Defendant's cross-complaint presents a clear federal question.  (Defs.' Opp. to Remand, at 6.)  Because there is diversity subject matter jurisdiction, the Court declines to reach the issue of whether this action implicates a clear federal question for removal jurisdiction under 28 U.S.C. § 1441(b).  Nevertheless, the Court notes that the cross-complaint is not relevant to the issue of federal question jurisdiction because jurisdiction must be analyzed on the basis of the *plaintiff's* well-pleaded complaint at the time of removal, *Metro. Life Ins. Co. v. Taylor*, 481 U.S.58, 63 (1987), not Defendants' cross-complaint.

## A.  Legal Standard

The Federal Arbitration Act ("FAA") provides that a "written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of the contract."  9 U.S.C. § 2.  The FAA reflects both a "liberal federal policy favoring arbitration" and the "fundamental principle that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, __ U.S. __, 131 S. Ct.1740, 1745 (2011); *see also Circuit City Stores, Inc. v. Adams*, 279 F.3d 889, 892 (9th Cir. 2002) (the FAA not only places arbitration agreements on equal footing with other contracts, but also establishes a federal policy in favor of arbitration).

In deciding whether to enforce an arbitration agreement, the court must determine "(1) whether a valid agreement to arbitration exists and, if it does, (2) whether the agreement encompasses the dispute."  *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008) (internal citation and quotes omitted); *see also* 9 U.S.C. § 2. Determining the validity of an arbitration agreement is a question of contract interpretation and thus governed by state law.  *Circuit City Stores*, 279 F.3d at 892. Nevertheless, the FAA only "permits arbitration agreements to be declared unenforceable 'upon such grounds as exist at law or in equity for the revocation of any contract.' " *AT&T*, 131 S. Ct. at 1746 (quoting 9 U.S.C. § 2).  "When state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward:  The conflicting rule is displaced by the FAA."  *Id.* at 1747.  But "when a doctrine normally thought to be generally applicable, such as duress or . . . unconscionability, is alleged to have been applied in a fashion that disfavors arbitration," the inquiry becomes more complex.  *Id.* "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the

court to effect what . . . the state legislature cannot.' " *Id.* at 1747 (quoting *Perry v. Thomas*, 482 U.S. 483, 493 n.9 (1987)).

### B.  Unconscionability of the PAGA Arbitration Waiver

The parties do not dispute that both the FAA and California contract law apply to the instant action or that they executed a written arbitration agreement.  Defendants, however, contend that Plaintiff agreed to resolve all claims arising under his employment in binding arbitration pursuant to the Agreement, which Defendants claim is valid under California law.  Defendants further contend that the PAGA arbitration waiver in the Agreement and DRP are not unconscionable in light of the recent United States Supreme Court decision in *AT&T Mobility LLC v. Concepcion*.  The Court disagrees.

Under California law, courts may refuse to enforce a contract where, at the time of its formation, it was unconscionable, or may limit the application of any unconscionable clause.  Cal. Civ. Code § 1670.5(a).  A finding of unconscionability has both a procedural and substantive component.  *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000).  While procedural unconscionability focuses on the element of " 'oppression' or 'surprise' due to unequal bargaining power," substantive unconscionability centers on an " 'overly harsh,' or 'one-sided' results.' " *Id.* Defendants argue that the PAGA arbitration waiver in the Agreement is not unconscionable under *AT&T*, which Defendants claim invalidates *Franco v. Athens Disposal Co.*, 171 Cal. App. 4th 1277, 1303 (2009), holding that PAGA waivers are unenforceable.  In *Franco*, plaintiff, a nonexempt hourly employee, brought a class action suit against his former employer, seeking civil penalties under PAGA, among other things.  171 Cal. 4th at 1283.  The defendant moved to compel arbitration pursuant to a written arbitration agreement, which provided, as in this case, that the parties " 'waive any right to join or consolidate claims in arbitration with others or to make

claims in arbitration as a representative or as a member of a class or in a private attorney general capacity. . . .' " *Id.* at 1284.  In other words, the parties could arbitrate their individual claims, but not any class-action or representative PAGA claims.  The California appellate court held that the waiver clause was unconscionable because, *inter alia*, the provision expressly prohibited the plaintiff's ability to collect civil penalties in a representative capacity, thereby preventing plaintiff  "from performing the core function of a private attorney general" and undermining the very purpose and nature of a PAGA enforcement action aimed at protecting the public and penalizing the employer for past illegal conduct.  *Id.* at 1300, 1303.  The court found the arbitration agreement, which contained the invalid PAGA arbitration, "tainted with illegality," and thus unenforceable.  *Id.* at 1303.  The court subsequently denied defendant's motion to compel arbitration and ordered the action to proceed in a court of law.  *Id.*

Here, Defendants argue that the *Franco* decision is invalid under *AT&T Mobility v. Concepcion*.  However, the *Franco* court did not outright prohibit arbitration of a PAGA claim, but instead ruled that a PAGA waiver was unconscionable because it undercut the fundamental purpose of a PAGA action.  A PAGA waiver is unconscionable because it both deprives the individual of the right to bring a representative action and deprives the LWDA the benefits of the enforcement action brought by aggrieved employees.  Thus, to the extent that the *Franco* court invalidated the PAGA waiver on the basis of unconscionability, the decision is consistent with the rule applied in *AT&T*.  Furthermore, the facts upon which the Supreme Court based its decision in *AT&T* are readily distinguishable from those in the instant action.  In *AT&T*, customers brought a putative class action in federal court against a telephone company, alleging, among other things, that the company engaged in false advertising and fraud in connection with the sale and service of cellphones.  131 S. Ct. at 1744.  The cellphone contract between the plaintiffs and the company contained a class action waiver clause, which required that all claims be brought in the parties' "individual capacity, and not as a plaintiff or class member in any

purported class or representative proceeding." *Id.* (internal citation and quotes omitted).
The telephone company moved to compel arbitration, which was denied by the district
court because it found the cellphone agreement unconscionable under *Discovery Bank v.
Superior Court*, 36 Cal. 4th 148, 162–63 (2005), holding class action arbitration waivers
in contracts of adhesion involving disputes over small amounts of money to be
unconscionable. *Id.* at 1744–45. The Ninth Circuit affirmed the district court's decision,
finding that the class action waiver was unconscionable under California law, and that the
*Discovery Bank* rule was not preempted by the FAA, "because that rule was simply 'a
refinement of the unconscionability analysis applicable to contracts generally in
California.' " *Id.* at 1745 (quoting *Laster v. AT & T Mobility LLC*, 584 F.3d 849, 857
(9th Cir. 2009)). The Supreme Court reversed, holding that the *Discovery Bank* rule, to
the extent that it allowed for and mandated the availability of class arbitration, was
inconsistent with the FAA, which was designed to ensure the enforcement of arbitration
agreements according to their terms so as to facilitate streamlined proceedings. *Id.* at 131
S. Ct. at 1748, 1750–51. Specifically, the Supreme Court found that requiring class
arbitration is inconsistent with the FAA because (1) class arbitration sacrifices the
informality characteristic of arbitral proceedings, thereby rending arbitration slower and
more costly; (2) class arbitration requires procedural formality to the extent not
envisioned by Congress when it passed the FAA, and (3) class arbitration greatly
increases risks to defendants in high-stakes class proceedings because errors would not be
subject to appellate review. *Id.* at 1751–52.

   In the instant case, however, Defendants do not explain how *AT&T* applies to a
nonclass PAGA claim at issue here. Although not cited by Defendants, the district
court's recent decision in *Quevedo v. Macy's, Inc.*, __ F. Supp. 2d __, No. CV 09-1522,
2011 WL 3135052, at *17 (C.D. Cal. June 16, 2011) affords some support for
Defendants' position. In *Quevedo*, the district court found *Franco* no longer tenable
under *AT&T*, concluding that the arbitration of a representative PAGA action would, like

a class claim, require a more cumbersome and costlier process in contravention to the streamlined, informal arbitral process envisioned by the FAA, and because there is also the increased risk that erroneous decisions on a PAGA claim would go uncorrected. 2011 WL 3135052, at *17.  Just as arbitration is inappropriate for high-stakes class action claims, arbitration is *a fortiori* ill-suited for a representative action, which is intended to protect the public's interest.  *See id.*

But as Plaintiff correctly notes, *AT&T* concerned the enforceability of a consumer class action arbitration waiver, rather than a representative PAGA claim waiver.  (Pls.' Opp. at 21 (citing *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489, 500 (2011); *Plows v. Rockwell Collin, Inc.*, No. SACV 10-01936, 2011 U.S. Dist. LEXIS 88781, at *14–*15 (C.D. Cal. Aug. 9, 2011)).)  In *Brown*, the California appellate court refused to extend *AT&T* to a PAGA action in light of the fundamental nature and purpose of a PAGA claim.  *Brown*, 197 Cal. App. 4th at 500–03; *see also Plows*, 2011 U.S. Dist. LEXIS 88781, at *14–*15.  Specifically, the *Brown* court explained that the purpose of PAGA "contrasts with the private individual right of a consumer to pursue class action remedies in court or arbitration, which right, according to *AT&T* may be waived by agreement so as not to frustrate the FAA – a law governing private arbitration.  *AT&T* does not provide that a public right, such as that created under the PAGA, can be waived if such a waiver is contrary to state law."  *Brown*, 197 Cal. App. 4th at 500.  Furthermore, as noted by the *Brown* court, the *Quevedo* court failed to take into account that there are no separate individual claims in a PAGA action; rather, the individual must bring a PAGA claim as a representative action on behalf of himself and other aggrieved employees.  *See id.* at 503 n.8.[13]  The Court finds the reasoning offered by the *Brown*

---

[13] Defendants only cite, in cursory fashion, *Maiorano v. Professional Community Management, Inc.*, 2010 Cal. App. Unpub. LEXIS 7804 (Cal. App. 2d Dist. Sept. 30, 2010), a case ordered not to be published, for the proposition that a plaintiff must arbitrate his PAGA claim on an individual basis. (Defs.' Reply in Supp. Mot. to Compel at 6.)  But a PAGA claim is fundamentally a representative enforcement action, meant to be brought on behalf of the plaintiff *and* other aggrieved employees.  *See Arias*, 46 Cal. 4th at 980, 986; *Machado v. M.A.T. & Sons Landscape, Inc.*, No. 2:09-cv-00459, 2009

court persuasive. *See also Plows*, 2011 U.S. LEXIS 88781, at *14–*15 (agreeing with the *Brown* court's reasoning of why class action waivers in arbitration agreements may not be used to divest plaintiffs of their right to bring representative actions under PAGA and denying defendant's motion to compel arbitration of plaintiffs' PAGA claims). Because the PAGA arbitration waiver in the Agreement is unconscionable, and the waiver taints the entirety of the Agreement with illegality, the Court deems the Agreement unenforceable. [14]

## V.  CONCLUSION

      For the foregoing reasons, Plaintiff's motion to remand is DENIED, and Defendants' motion to compel arbitration is also DENIED.


DATED:  October 5, 2011

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

U.S. Dist. LEXIS 63414, at *7 (E.D. Cal. July 23, 2009) ("PAGA's language explicitly states that the representative action must include 'other current or former employees.' ").

[14] As the PAGA arbitration waiver in the Agreement is sufficient for finding the Agreement unconscionable under *Franco v. Athens Disposal Co.* and *Brown v. Ralphs Grocery Co.*, the Court declines to reach Plaintiff's other grounds for finding the Agreement unconscionable.